UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

AURUBIS BUFFALO, INC,

        Plaintiff,

    v.                                        20-CV-1937-LJV
                                                 DECISION & ORDER

LIBERTY MUTUAL INSURANCE
COMPANY,

        Defendant.

─────────────────────────────────

Before the Court are cross-motions for summary judgment filed by the plaintiff, Aurubis Buffalo, Inc. ("Aurubis"), Docket Item 73, and the defendant, Liberty Mutual Insurance Company ("Liberty Mutual"), Docket Item 75.  Both parties responded to the other side's motion, Docket Items 81 and 82, and then replied, Docket Items 83 and 84.  For the reasons that follow, this Court finds that material issue of fact preclude summary judgment and therefore denies both motions.

## BACKGROUND[1]

Aurubis is a company that "manufactures copper and brass sheet, which is used to manufacture numerous products, such as roofing copper and brass hose nozzles." Docket Item 73-9 at ¶ 2.  From 2006 to 2012, Aurubis was self-insured for workers'

─────────────────

[1] On a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party.  *See Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  The following facts are taken from the parties' statements of material facts, Docket Item 73-9 (Aurubis's statement); Docket Item 75-8 (Liberty Mutual's statement); and the exhibits incorporated in those filings.  The Court notes when facts are disputed.

compensation claims up to $250,000 and contracted with Liberty Mutual for excess coverage over that amount.[2]  *Id.* at ¶¶ 5, 7; Docket Item 75-8 at ¶¶ 1-7.  Relevant here, the excess insurance policy provided as follows:

> How This Insurance Applies
>
> This insurance applies to bodily injury by accident or bodily injury by disease.  Bodily injury includes resulting death.
>
> …
>
> 4. Bodily injury by accident must occur during the policy period.
>
> 5. Bodily injury by disease must be caused or aggravated by the conditions of your employment.  The employee[']s last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

Docket Item 75-8 at ¶ 2.

In 2009, Alan White, an employee of Aurubis, was diagnosed with silicosis. Docket Item 73-9 at ¶ 21.  White then filed a workers' compensation claim based on his contention that his "silicosis result[ed] from exposure to silica that occurred while he was working at Aurubis."  *Id*.  More specifically, "White had been working in the Cast Shop, which is one of only two locations at Aurubis where silica is used."  *Id.* at ¶ 22.  To avoid further exposure to silica, "White was moved from the Cast Shop . . . to the Copper Mill" in January 2011.  *Id.* at ¶¶ 24, 27.  He "worked as a Press Operator in the Copper Mill from May 16, 2011 - June 22, 2015," when he "became a Jitney Operator in the Shipping Department, driving a forklift truck."  *Id.* at ¶¶ 25-26.

---

[2] The initial policy was in place from November 30, 2006, to November 30, 2007. Docket Item 73-2.  Aurubis renewed the policy for the following periods: November 30, 2007, to June 1, 2008, Docket Item 73-3; June 1, 2008, to June 1, 2009, Docket Item 73-4; June 1, 2009, to June 1, 2010, Docket Item 73-5; June 1, 2010, to June 1, 2011, Docket Item 73-6; and June 1, 2011, to June 1, 2012, Docket Item 73-7.

On December 18, 2013, the Workers' Compensation Board issued a decision finding that White "ha[d] satisfied the requirements of [s]ection 47 [of the Workers' Compensation Law] and that [Aurubis had] not provided substantial evidence to the contrary." *Id.* at ¶ 28. The Board further found that White had "silicosis with a date of disablement of [October 6, 2009]." *Id.* At a hearing in August 2020, a Workers' Compensation law judge found that "the date of injurious exposure [wa]s the same as the [d]ate of [d]isablement." *Id.* at ¶ 30.

After Aurubis sought to tap into its excess coverage, Liberty Mutual disclaimed coverage, arguing that "the last day of last exposure is outside our period of coverage." *Id.* at ¶ 33. To support that contention, Liberty Mutual retained an expert—David Kamelhar, M.D.—who opined that "it can be said with a reasonable degree of medical certainty, that numerous industrial exposures that occurred after June 2010 resulted in exacerbation of any pulmonary/respiratory symptoms that were initiated by silica exposure and consequential silicosis." Docket Item 75-8 at ¶ 46. Dr. Kamelhar further opined that he could "state with a reasonable degree of medical certainty that [White] was repeatedly exposed to conditions that would aggravate his bodily injury by disease in the years between 2012 [and] 2019." Docket Item 81 at 6. Additionally, Dr. Kamelhar—as well as another doctor, Taj M. Jiva, M.D.—testified that White's "silicosis led to his development of COPD." Docket Item 75-8 at ¶¶ 47-48; *see* Docket Item 75-2 at 8-15.

The parties dispute whether silicosis is the only "[b]odily injury by disease" underlying Smith's workers compensation claim or whether COPD is part of that claim. *Compare* Docket Item 75-7 at 2, *with* Docket Item 82 at 5. They also contest whether

Smith's "last day of last exposure to the conditions causing or aggravating such bodily injury by disease . . . occur[ed] during the policy period." *Compare generally* Docket Item 75-7, *with* Docket Item 82.

## <u>LEGAL PRINCIPLES</u>

Under Federal Rule of Civil Procedure 56, a court appropriately grants summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant"—that is, the party seeking summary judgment— "has the burden of showing that there is no genuine issue of fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The movant may satisfy that burden by relying on evidence in the record, "including depositions, documents, . . . [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the [non-moving] party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)); *see* Fed. R. Civ. P. 56(c)(1)(B).

Once the movant has satisfied its initial burden, the non-moving party "must come forward with specific facts showing that there is a genuine" dispute of material fact—that is, that a "rational trier of fact [could] find for the non-moving party" on the "record taken as a whole." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations, emphasis, and internal quotation marks omitted). If the non-moving party fails to do so, the court will grant summary judgment. *See Celotex*, 477 U.S. at 322-23; Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

In deciding a motion for summary judgment, "the court must view the evidence in the record in the light most favorable to the non-moving party" and "draw[] all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 465-66 (2d Cir. 2001). But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996); *see also Matsushita*, 475 U.S. at 586 (non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts" to defeat summary judgment when moving party has met its burden). Instead, under Rule 56, the party opposing a motion for summary judgment must "properly support an[y] assertion[s] of fact," Fed. R. Civ. P. 56(e), by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 324.

## **DISCUSSION**

## I. **AURUBIS'S MOTION FOR SUMMARY JUDGMENT**

Aurubis argues that it is entitled to summary judgment because "[t]here is no admissible evidence in the record that . . . White was exposed to silica after the policy term ended, and, as Liberty Mutual's expert admits, . . . White's exposure to other airway irritants did not make his silicosis any worse." Docket Item 74 at 5. Aurubis further argues that this Court should rely on the New York State Workers'

Compensation Board's "finding that October 6, 2009[,] was the date of injurious exposure to silica by . . . White."  *Id.* at 10; *see Matter of Ward v. Gen. Util.*, 100 A.D.3d 1113, 1113 (3d Dep't 2012) ("When a claimant suffers his or her last injurious exposure to a dust hazard pursuant to Workers' Compensation Law § 44-a is a question of fact for the Board to resolve and its determination will not be disturbed if supported by substantial evidence.").

As an initial matter, as this Court previously found,[3] it is not bound by the Workers' Compensation Board's finding.  *See* N.Y. Work. Comp. Law §118-a; §11(2). Moreover, and as Liberty Mutual observes, it does not appear that the Workers' Compensation Board did any fact-finding in reaching its decision on the date of last exposure.  *See* Docket Item 81 at 9 (explaining that "[t]he determination as to the date of last injurious exposure was the result of an unopposed motion pursued by [Aurubis]" without any "evidence submitted" or "medical records referenced or offered during the hearing").  Nor is there any indication in the record before this Court on what basis the Workers' Compensation Board determined the 2009 date, except that it was the date submitted by Aurubis in its unopposed motion.

What is more, the October 2009 date is contradicted by Aurubis's own statement of undisputed facts, which indicates that Smith was not moved out of the Cast Shop— where he was exposed to silica—until 2011.  *See* Docket Item 73-9 at ¶ 21.  So for all

---

[3] On September 23, 2024, this Court issued a decision from the bench denying without prejudice the parties' previous cross-motions for summary judgment, granting Aurubis's motion to amend the complaint, and granting Liberty Mutual's request for discovery.  *See* Docket Item 63.

those reasons, this Court does not find support for the date of last exposure found by the Workers' Compensation Board.

That brings the Court to the crux of Aurubis's argument: that Smith was not exposed to silica—the only substance that caused or aggravated his sole "bodily injury by disease," silicosis—outside the policy period. *See generally* Docket Item 74. Liberty Mutual counters that "it is now undisputable that [White]'s bodily injury by disease" is not simply silicosis but "is silicosis *with resulting COPD*." Docket Item 81 at 4 (emphasis added). And there is ample evidence in the record, Liberty Mutual says, that White's COPD was aggravated by airway irritants to which he was exposed after the policy period ended. *See id.* In fact, Dr. Kamelhar and Dr. Jiva both have opined that airway irritants would make COPD symptoms worse. *See id.* at 6.

In its reply, Aurubis counters that "[t]he Workers' Compensation Board evaluated the medical evidence before it and established . . . White's case for ODNCR (Occupational Disease, Notice, and Causal Relationship) [as] <u>silicosis</u>." Docket Item 83 at 4. Moreover, Aurubis notes, "Dr. Kamelhar testified silicosis and COPD are entirely separate diagnoses—silicosis being a disease of the lung and COPD a disease of the airway." *Id.* at 8. And "Dr. Jiva, who was retained by [Liberty Mutual] in connection with the Workers' Compensation proceedings, consistently testified that silicosis and COPD are distinct illness[es], explaining that silicosis can contribute to COPD because scar tissue in the lungs resulting from the silicosis may cause the bronchial tubes of the airway to collapse." *Id.* (internal citation omitted).

Insurance contracts are interpreted "like any ordinary contract." *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 7 F.4th 50, 56 (2d Cir. 2021) (internal quotation

marks and citation omitted).  And "[i]n a dispute over the meaning of a contract, the threshold question is whether the contract is ambiguous, which is a question of law for the court."  *Great Minds v. Fedex Off. & Print Servs., Inc.*, 886 F.3d 91, 94 (2d Cir. 2018) (internal quotation marks and internal citations omitted).  "Ambiguous language is that which is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages[,] and terminology as generally understood in the particular trade or business."  *Utica Mut. Ins. Co.*, 7 F.4th at 56 (internal quotation marks and citation omitted).

Here—although they do not quite frame it as such—the parties' central dispute is about what constitutes "bodily injury by disease" under the contract.  More specifically, does "bodily injury by disease" cover only the initial diagnosis, here silicosis, or does it include other conditions that are caused by that initial disease, here COPD?

The Court finds that the contract is ambiguous as to this question.  There is no definition of "bodily injury by disease" other than to say that it "must occur in the course of employment necessary or incidental to work" and must be "caused or aggravated by the conditions of employment" to qualify.  *See* Docket Item 73-4 at 14.

"[A] determination that a contract is ambiguous ordinarily requires denial of summary judgment."  *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 115 (2d Cir. 2010).  But "the court may nonetheless grant summary judgment where the extrinsic evidence illuminating the parties' intended meaning of the contract is 'so one-sided that no reasonable person could decide to the contrary.'"  *Id.* (quoting *Compagnie Financiere De Cic Et De L'Union Europeenne v. Merrill Lynch, Pierce,*

*Fenner & Smith, Inc.,* 232 F.3d 153, 158 (2d Cir. 2000)).  "Similarly, summary judgment may be granted despite any ambiguities in the contract 'where there is no extrinsic evidence that would support a resolution of [the] ambiguities in favor of the nonmoving party's case.'"  *Id.* (quoting *Topps Co. v. Cadbury Stani S.A.I.C.,* 526 F.3d 63, 68 (2d Cir. 2008)).  Neither of those situations is the case here, however.

Rather, taking all the facts in the light most favorable to Liberty Mutual—as the Court must on Aurubis's motion for summary judgment—a jury could find that the "bodily injury by disease" underlying Smith's workers compensation claim included COPD.  Among other things, as Liberty Mutual argues, Smith's medical bills appear to include costs associated with COPD.  *See* Docket Item 81 at 5.  And there seems to be no dispute that Smith's silicosis caused his COPD.  *See* Docket Item 75-8 at ¶¶ 47-48; Docket Item 82 at 10.

That the Workers' Compensation Board established White's claim based on silicosis only does not change the calculus.  As explained above, this Court is not bound by the decisions of the Workers' Compensation Board.  *See* N.Y. Work. Comp. Law §118-a; §11(2).  Nor is there any indication that the argument Liberty Mutual advances here about COPD was made to the Workers' Compensation Board.

For all those reasons, Aurubis's motion for summary judgment is denied.

## II.    LIBERTY MUTUAL'S MOTION FOR SUMMARY JUDGMENT

Liberty Mutual moves for summary judgment based on the opposite argument: that Smith's "bodily injury by disease" necessarily included COPD, which, Liberty Mutual says, was clearly aggravated by irritants after the policy period.  *See generally* Docket Item 75-7.

Liberty Mutual's motion is denied for largely the same reasons that scuttled Aurubis's motion. As explained above, this Court finds the term "bodily injury by disease" to be ambiguous. Based on the record, a jury could find that the only disease underlying Smith's workers' compensation claim was silicosis. And because Smith was moved out of the Cast Shop in 2011, the jury also could find that his last date of injurious exposure was before the policy period ended on June 1, 2012. Indeed, as Aurubis observes, Liberty Mutual's own expert concedes that White's "exposure to toxins other than silica . . . would not make his . . . silicosis worse." *See* Docket Item 74 at 11-12.

Thus, material issues of fact preclude summary judgment for Liberty Mutual as well.

## **CONCLUSION**

For all those reasons, this Court finds that material issues of fact preclude summary judgment. The parties cross-motions for summary judgment, Docket Items 73 and 75, are DENIED, and the case will proceed to trial on September 8, 2025.


SO ORDERED.

Dated:   July 29, 2025
             Buffalo, New York


            */s/ Lawrence J. Vilardo*
            LAWRENCE J. VILARDO
            UNITED STATES DISTRICT JUDGE

10